**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Joseph Alongis, on behalf of himself and all others similarly situated,<br><br>                             Plaintiff,<br><br>         -v-<br><br>Arby's Restaurant Group, Inc.,<br><br>                        Defendant. | 2:23-cv-6593<br>(NJC) (LGD) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

      Plaintiff Joseph Alongis ("Alongis") brings claims on behalf of himself and similarly situated individuals against Defendant Arby's Restaurant Group, Inc. ("Arby's") for its use of allegedly false and misleading advertisements to sell Arby's Classic Roast Beef, Double Roast Beef, Half Pound Roast Beef, Classic Beef 'N Cheddar, Double Beef 'N Cheddar, Half Pound Beef 'N Cheddar, and Smokehouse Brisket sandwiches ("Sandwiches"), which allegedly misrepresented that the Sandwiches contain rare roast beef and contain at least double the amount of meat than what is actually sold to consumers. (Am. Compl. ¶ 1, ECF No. 16.)[1] The Amended Complaint brings claims for violations of New York General Business Law §§ 349

---

[1] The Amended Complaint alleges that the Sandwiches contain roast beef and that Arby's advertisements misrepresented that the roast beef sold to customers would be rare, rather than fully-cooked, roast beef. (Am. Compl. ¶ 4.) While the Amended Complaint refers to this as a misrepresentation of the "quality" of the roast beef used in the Sandwiches, Arby's refers to it as a difference in the "temperature" of the roast beef. (Am. Compl. ¶ 2; Mem. at 3, 7, 8, 9, 13, ECF No. 22; Reply at 4 n.2, ECF No. 24.) For purposes of this opinion, I will refer to the alleged misrepresentation as the "rare roast beef misrepresentation."

and 350 ("Section 349" and "Section 350") on behalf of two proposed classes with overlapping membership.

The Amended Complaint defines the first proposed class, the "Class" as:

> All persons or entities that purchased a Classic Roast Beef, Double Roast Beef, Half Pound Roast Beef, Classic Beef 'N Cheddar, Double Beef 'N Cheddar, Half Pound Beef 'N Cheddar, and/or Smokehouse Brisket menu item from the website or mobile application for Arbys.com, Ubereats.com, Grubhub.com, Seamless.com, and/or Doordash.com, for pickup or delivery from an Arby's store located in the state of New York, during the period between September 5, 2020, through the date of the final disposition of this action (the "Class").

(Am. Compl. ¶ 38.) The Amended Complaint defines the second proposed class, the "Subclass" as:

> All persons or entities that purchased a Classic Roast Beef, Double Roast Beef, Half Pound Roast Beef, Classic Beef 'N Cheddar, Double Beef 'N Cheddar, Half Pound Beef 'N Cheddar, and/or Smokehouse Brisket menu item from inside or through the drive-through of an Arby's store, located in the state of New York, during the period between September 5, 2020, through the date of the final disposition of this action (the "Subclass").

(*Id.* ¶ 39.) While the Amended Complaint uses the term "Subclass" to describe the second proposed class, not all members of the Subclass are members of the putative Class as is the case with a subclass under Fed. R. Civ. P. 23(c)(5). For example, the Subclass definition includes people who purchased Sandwiches inside an Arby's store located in New York, but did not purchase Sandwiches "from a website or mobile application" "for pickup or delivery" from an Arby's store located in New York as required for membership in the Class. (*Id.* ¶¶ 38–39.)[2]

---

[2] Arby's characterizes the Subclass as "a class of New York *consumers* who purchased Arby's slow roasted beef sandwiches in-person" and the Class as a "class of *New Yorkers* who purchased the sandwiches from Arbys.com or mobile delivery sites like Ubereats.com, Grubhub.com, Seamless.com, and/or Doordash.com." (Mem. at 3 & 3 n.2 (emphasis added).) Arby's appears to characterize the Subclass as a nationwide class and the Class as a New York class. Alongis's brief opposing the Motion to Dismiss, does not respond to these characterizations. (*See generally* Opp'n.)

2

Before me is Arby's Motion to Dismiss ("Motion to Dismiss") the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rule of Civil Procedure ("Fed. R. Civ. P."). (Mot., ECF No. 21). For the reasons set forth below, I deny in part and grant in part the Motion to Dismiss, as follows:

(1)     **Standing as to the "Subclass":** Alongis has standing to bring Section 349 and Section 350 claims on the behalf of the Subclass regarding purchases of the Sandwiches made inside or through a drive-through at Arby's stores in New York. Although Alongis purchased only the Double Beef 'N Cheddar and Smokehouse Brisket sandwiches ("Purchased Sandwiches") in store, he has standing to bring such claims on behalf of Subclass members who purchased the Classic Roast Beef, Double Roast Beef, Half Pound Roast Beef, Classic Beef 'N Cheddar, and Half Pound Beef 'N Cheddar sandwiches ("Unpurchased Sandwiches"), which Alongis did not himself purchase, because Alongis suffered actual injury as a result of Arby's alleged misrepresentations and Arby's alleged misrepresentations implicate the same set of concerns with respect to the Purchased Sandwiches and Unpurchased Sandwiches. Accordingly, I deny Arby's Motion to Dismiss Alongis's Section 349 and Section 350 claims on behalf of the Subclass under Rule 12(b)(1).

(2)     **Standing as to the "Class":** Alongis likewise has standing to bring Section 349 and Section 350 claims on behalf of the Class regarding website or mobile application purchases of Sandwiches from Arby's stores located in New York through Arbys.com, Ubereats.com, Grubhub.com, Seamless.com, and Doordash.com ("the Online Ordering Services"). Although he did not use any of these websites or mobile applications to purchase Sandwiches, Alongis suffered actual injury as a result of Arby's alleged misrepresentations and Arby's alleged misrepresentations implicate the same set of concerns with respect to Sandwiches purchased at a

New York Arby's location and Sandwiches purchased through the Online Ordering Services. Accordingly, I deny Arby's Motion to Dismiss Alongis's Section 349 and Section 350 claims on behalf of the Class under Rule 12(b)(1).

(3)    **Section 349 and Section 350 Claims Regarding the Alleged Rare Roast Beef Misrepresentations (the "Rare Roast Beef Misrepresentation Claims"):** The Amended Complaint plausibly pleads Section 349 and Section 350 claims regarding Arby's alleged misrepresentations that the Sandwiches contain rare roast beef. Accordingly, I deny the Motion to Dismiss Alongis's Section 349 and Section 350 claims regarding the alleged rare roast beef misrepresentations under Rule 12(b)(6).

(4)    **Section 349 and Section 350 Claims Regarding the Alleged Volume Misrepresentations (the "Volume Misrepresentation Claims"):** The Amended Complaint plausibly pleads Section 349 and Section 350 claims regarding Arby's alleged misrepresentations about the volume of meat contained in the Classic Roast Beef, Double Roast Beef, Classic Beef 'N Cheddar, Double Beef 'N Cheddar, and Smokehouse Brisket sandwiches ("Non-Half Pound Sandwiches"), but fails to do so with respect to the Half Pound Roast Beef and Half Pound Beef 'N Cheddar sandwiches ("Half Pound Sandwiches"). Accordingly, pursuant to Rule 12(b)(6), I grant the Motion to Dismiss Alongis's Section 349 and Section 350 claims challenging Arby's alleged misrepresentations about the volume of meat contained in the Half Pound Sandwiches and deny the Motion with respect to Arby's alleged misrepresentations about the volume of meat contained in the Non-Half Pound Sandwiches. The Section 349 and Section 350 claims challenging Arby's alleged misrepresentations about the volume of meat contained in the Half Pound Sandwiches are dismissed with prejudice.

## JURISDICTION AND VENUE

Jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), requires a "class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6)). With respect to the amount-in-controversy requirement, the complaint must allege facts supporting "a reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million." *Id.* at 58. In satisfying this burden, there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 961 (S.D.N.Y. 2014) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.2006)).

This Court has subject matter jurisdiction over this action pursuant to the CAFA. By sworn declaration, James C. Kelly, Alongis's counsel, attests that "Arby's has over 65 locations in New York" and provides a "conservative estimate" that "over 3.4 million" Sandwiches were purchased "over a three-year period," which presumably refers to the three-year period preceding the filing of this action on September 5, 2023. (Kelly Decl. ¶¶ 3, 6, ECF No. 30-2; *see also* Am. Compl. ¶¶ 38–39.) Furthermore, Kelly attests that since Arby's has "65 locations in New York" with "approximately $1.3 million" in "average annual sales per store," Arby's has "approximately $84.5 million in annual state sales." (Kelly Decl. ¶ 5.) Kelly further attests that, "[a]ssuming a conservative 20% of these sales are from Arby's flagship roast beef sandwiches, the relevant sales base is approximately $16.9 million per year." (*Id.*) Taking as true the allegations of the Amended Complaint, the putative Class and Subclass have 100 or more

putative members and there is a "reasonable probability that the aggregate claims of the plaintiff class[es] are in excess of $5 million." *Blockbuster, Inc.*, 472 F.3d at 58.

Kelly attests that Arby's "is a corporation organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia." (Kelly Decl. ¶ 10.) Accordingly, Arby's is a citizen of Delaware and Georgia. *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). ("[F]or diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business.")

By sworn declaration, Alongis attests that he has lived in New York his entire life, has been a resident of Oceanside, New York since 2008, has a New York driver's license, pays utility bills for his home in Oceanside, NY, and used his Oceanside address on his 2024 federal and New York state tax returns. (Alongis Decl. ¶¶ 2–6, ECF No. 30-1.) Alongis has thus demonstrated that New York is his domicile, and that he is a citizen of New York for diversity jurisdiction purposes. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," or in other words, "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.").

The requirements for CAFA jurisdiction under 28 U.S.C. § 1332(d) are met because Alongis has established that there are more than 100 members of the putative Class and the putative Subclass, there is a reasonable probability that the amount in controversy exceeds $5,000,000, and there is minimal diversity between Alongis, a New York citizen, and Arby's, a Delaware and Georgia citizen.

6

The next issue to determine whether there is personal jurisdiction over Arby's as a foreign defendant. A court considering personal jurisdiction over a foreign defendant first looks "to the law of the forum state to determine whether personal jurisdiction will lie" and then considers "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

Under New York's long-arm statute, New York Civil Practice Law and Rules § 302(a)(1) ("Section 302(a)(1)"), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Jurisdiction under Section 302(a)(1) requires showing that "(1) the defendant . . . transacted business within the state" and "(2) the claim asserted . . . arise[s] from that business activity." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981)). The second prong of the test "does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but "instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci*, 732 F.3d at 168–69 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)).

The Due Process Clause requires that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 169 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts analysis has three steps. *U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). "First, the defendant must have

purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Id.* (citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality opinion)). "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *Id.* And third, the court must determine that jurisdiction is "reasonable under the circumstances." *Id.*

Here, the Complaint alleges that Arby's sold the Sandwiches in New York, where Alongis purchased two of the Sandwiches, and it is clear that Alongis's claims arise out of that purchase. (Am. Compl. ¶¶ 1–2, 18–19.) Because Arby's "purposefully availed itself of the privilege of doing business in" New York, jurisdiction is reasonable under the circumstances. *U.S. Bank Nat'l Assoc.*, 916 F.3d at 150. This Court therefore has specific personal jurisdiction over Arby's with respect to Alongis's Section 349 and Section 350 claims. *See Licci*, 732 F.3d at 170.

Venue is proper under 28 U.S.C. § 1391(b)(2) because Alongis purchased two of the Sandwiches in this judicial district. (Am. Compl. ¶¶ 18–19.)

## BACKGROUND

For the purpose of evaluating the Motion to Dismiss under Rule 12(b)(6), I assume as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in Alongis's favor. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). For the purpose of evaluating the Motion to Dismiss under Rule 12(b)(1), I accept the Amended Complaint's factual allegations as true except where evidence in the record directly contradicts a specific factual allegation; where there is such a contradiction, I consider whether Alongis has

proven the alleged facts to support standing by a preponderance of the evidence. *See infra* Legal Standards § I; *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022).[3]

## I.     Arby's Use of Photographs of the Sandwiches

Arby's sold the Sandwiches to consumers in New York through in-store, drive-through, and online orders. (Am. Compl. ¶ 60.) According to the Amended Complaint, Arby's used "materially false and misleading advertisements," which include photographs that "represent to consumers that the [Sandwiches] contain, at a minimum, 100% more meat than contained in the actual menu item customers receive and that Arby's roast beef sandwiches contain rare roast beef." (*Id.* ¶ 2, 56, 72.) Arby's "prominently and explicitly displayed" the photographs "from Arby's website, for each of the [Sandwiches]," "on the menu ordering boards located within the store and in the drive-through at every Arby's store location in New York" such that "every customer will view said photographs prior to the time of the purchase." (*Id.* ¶¶ 35–36.) Arby's also "prominently and explicitly displayed" the same photographs "from Arby's website, for each of the [Sandwiches]," on the Online Ordering Services in a way "that a consumer cannot make a purchase" on the Online Ordering Services "without viewing said photographs prior to purchase." (*Id.* ¶ 37.)

The Amended Complaint includes photographs of five of the seven Sandwiches, which it alleges are the same photographs displayed on Arby's website, "on the menu ordering boards located within the store and in the drive-through at every Arby's store location in New York," and on the Online Ordering Services. (Am. Compl. ¶¶ 5–9; 35–37.) Those five sandwiches are

---

[3] *See also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017).

the Classic Roast Beef, Classic Beef 'N Cheddar, Double Beef 'N Cheddar, Half Pound Beef 'N

Cheddar, and Smokehouse Brisket. (*Id* ¶¶ 5–9.) The Amended Complaint also includes

corresponding photographs of purchased sandwiches that Alongis and other consumers actually

received. (*Id.*)[4] The Amended Complaint does not contain photographs of actual Double Roast

Beef and Half Pound Roast Beef sandwiches purchased by consumers or the photographs of

these two Sandwiches as used in the challenged advertisements. (*See generally* Am. Compl.)[5]

    The photographs from the Amended Complaint are included below for ease of reference.

**Figure 1:** Classic Roast Beef Advertisement v. Actual Classic Roast Beef Received

 

---

[4] The images of the Classic Roast Beef, Classic Beef 'N Cheddar, and Half Pound Beef 'N Cheddar sandwiches purchased by consumers in the Amended Complaint are screenshots from YouTube videos created by Arby's customers other than Alongis. (Am. Compl. at 2 n.1, 3 n.2, 4 n.4.) The photos in the Amended Complaint of the purchased Double Beef 'N Cheddar and Smokehouse Brisket sandwiches were taken by Alongis when he purchased those two Sandwiches. (*Id.* at 3 n.3, 4 n.5.)

[5] Alongis provides no explanation in his opposition to Arby's Motion to Dismiss for the omissions.

**Figure 2:** Classic Beef 'N Cheddar Advertisement v. Actual Classic Beef 'N Cheddar Received



**Figure 3:** Double Beef 'N Cheddar Advertisement v. Actual Double Beef 'N Cheddar Received



**Figure 4:** Half Pound Beef 'N Cheddar Advertisement v. Actual Half Pound Beef 'N Cheddar Received



**Figure 5:** Smokehouse Brisket Advertisement v. Actual Smokehouse Brisket Received



The Amended Complaint alleges that due to Arby's advertisements using the allegedly misleading photographs, consumers "ma[d]e purchases that they would not have otherwise made" or "pay a premium" for the Sandwiches "they otherwise would not have" paid and "receiv[ed] a product that is materially lower in value than what" the advertisements "represented." (*Id.* ¶¶ 11, 13, 57, 73.)

## II.    The Alleged Volume Misrepresentations

According to the Amended Complaint, Arby's "use[d] photographs in its advertisements that make it appear that the [Sandwiches] contain at least 100% more meat than what the actual sandwiches that customers receive contain." (*Id.* ¶ 3; *see also id.* at 10.)

The Amended Complaint alleges that an Arby's spokesperson made a statement to NewsBreak following the filing of this action, stating "[i]t is important to note that promotional images are stylized for visual appeal and may not depict the exact portion size . . . [and that] . . . Arby' s assures customers that they are continuously working to improve the transparency of their marketing materials." (*Id.* ¶ 17; *see* ECF No. 22-9.)

On August 3, 2023, Alongis arrived at an Arby's store located in Bellmore, New York. (Am. Compl. ¶ 18.) Prior to arriving at the Arby's store, Alongis had "viewed the photographs

for Arby's Double Beef 'N Cheddar and Smokehouse Brisket sandwiches from the menu ordering board on Arby's website and relied on said photographs in choosing to drive to Arby's and purchase said sandwiches." (*Id.* ¶ 20.) Upon arriving at the Arby's store, Alongis "viewed and relied on" "large prominent and explicit photographs of the Beef 'N Cheddar and Smokehouse Brisket sandwiches displayed on Arby's menu ordering board behind the cash register" located in the store. (*Id.* ¶¶ 21–22.) Alongis purchased a Double Beef 'N Cheddar sandwich and a Smokehouse Brisket sandwich (the Purchased Sandwiches) for $7.69 plus tax each. (*Id.* ¶¶ 18–19.)[6]

Alongis "expected that the Double Beef 'N Cheddar that he ordered would contain approximately double the amount [of] beef as contained in the photograph for the Beef 'N Cheddar sandwich on the in-store menu ordering board" and "that the Smokehouse Brisket sandwich that he ordered would contain a similar amount of meat as contained in the photograph for the Smokehouse Brisket sandwich on the in-store menu ordering board." (*Id.* ¶¶ 23–24.) Despite his expectations, "the Double Beef 'N Cheddar and Smokehouse Brisket sandwiches that [Alongis] purchased contained less than half of the amount of meat than he expected." (*Id.* ¶ 25.) The Amended Complaint alleges that Alongis "would not have purchased . . . and/or . . . paid the price that he paid" for the sandwiches, if he knew they "contained less than half of the amount of meat as advertised." (*Id.* ¶ 27.)

---

[6] The Amended Complaint does not address why Alongis did not view a photograph of the Double Beef 'N Cheddar sandwich displayed on the in-store menu ordering board prior to purchasing that sandwich and why he instead relied, in part, on an in-store photograph of the Beef 'N Cheddar sandwich.

### III.     The Alleged Rare Roast Beef Misrepresentations

According to the Amended Complaint, the photographs Arby's "use[d] . . . in its advertisements" also "deceptively misrepresent[] the quality of the roast beef" in the Sandwiches, because the photographs "show[] the meat" in the Sandwiches "as rare roast beef . . . when the roast beef regularly served to customers is not the rare roast beef as advertised but fully cooked roast beef." (*Id.* ¶ 4.)

When Alongis purchased a Double Beef 'n Cheddar sandwich on August 3, 2023, he "expected that the color of the roast beef in his Double Beef 'N Cheddar sandwich would be similar to the color of the meat contained in the photograph of the Double Beef 'N Cheddar sandwich from the menu ordering board on Arby's website," which he had "viewed" prior to driving to the Arby's store, as well as "the photograph of the Beef 'N Cheddar sandwich on Arby's in-store menu ordering board," which he had "viewed and relied on" "prior to the time that he placed his order." (*Id.* ¶¶ 20, 22, 26.) Despite his expectations, "the Double Beef 'N Cheddar sandwich . . . did not contain any rare roast beef," but instead only contained "fully cooked roast beef," which the Amended Complaint alleges "is materially lower in value than rare roast beef." (*Id.* ¶ 26.) The Amended Complaint also alleges that Alongis "would not have purchased . . . and/or . . . paid the price he paid" for the Double Beef 'N Cheddar sandwich if he knew that it "would not contain any rare roast beef." (*Id.* ¶ 28.)

## PROCEDURAL HISTORY

On September 5, 2023, Alongis filed the Complaint in this action. (Compl., ECF No. 1.) On October 19, 2023, the parties filed a joint letter requesting leave for Alongis to file an amended complaint by November 17, 2023 and approval of the parties' proposed briefing schedule for Arby's anticipated motion to dismiss or other response to the forthcoming amended

complaint. (ECF No. 7.) Magistrate Judge Lee Dunst, to whom certain pre-trial matters are assigned, granted Alongis leave to file an amended complaint by November 17, 2023 and extended the deadline for Arby's to file a response to the amended complaint to December 18, 2023. (Elec. Order, Nov. 6, 2023.) However, Magistrate Judge Dunst denied the parties' request for a briefing schedule on Arby's anticipated motion to dismiss and instead ordered Arby's to file a letter requesting a pre-motion conference concerning any anticipated motion to dismiss the forthcoming amended complaint. (*Id.*)

Arby's filed the Amended Complaint on November 16, 2023. (Am. Compl.) On December 18, 2023, Arby's filed its letter requesting a pre-motion conference concerning its anticipated motion to dismiss. (ECF No. 17.) On December 26, 2023, Alongis filed a response in opposition. (ECF No. 18.) After reviewing the parties' submissions, I waived the pre-motion conference requirement and issued a briefing schedule on Arby's motion to dismiss the Amended Complaint. (Elec. Order, January 16, 2024.)

On April 2, 2024, Arby's filed its fully-briefed Motion to Dismiss in accordance with this Court's recommended bundling practices. (Mot.; Mem., ECF No. 22; Opp'n, ECF No. 23; Reply, ECF No. 24.) This includes: (1) Arby's motion, supporting memorandum of law and attached exhibits (Mot.; Mem.); (2) Alongis's opposition brief (Opp'n); and (3) Arby's reply brief (Reply).

On May 6, 2025, Alongis filed a notice of supplemental authority regarding the decision of a federal district court in Florida in *Coleman v. Burger King Corporation*, No. 22-cv-20925 (S.D. Fla. May 5, 2025). (ECF No. 27.) On May 13, 2025, Arby's filed a response to Alongis's notice of supplemental authority. (ECF No. 28.)

## LEGAL STANDARDS

### I.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021); *see also Russo v. United States*, No. 22-cv-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

16

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th at 441. For example, when the extrinsic evidence "reveals the existence of factual problems" related to standing, the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57–58.

## II.    Failure to State a Claim Under Rule 12(b)(6)

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green*, 16 F.4th at 1076–77 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiff[] . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a

defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.    Standing

Before considering the merits, I first determine whether I have subject matter jurisdiction over the Plaintiff's claims. *Daly*, 939 F.3d at 426. Arby's argues that Alongis lacks standing to assert two sets of claims: (1) claims brought on behalf of the Class and Subclass regarding the Unpurchased Sandwiches, and (2) claims brought on behalf of the Class regarding all Sandwiches purchased through the Online Ordering Services, which Alongis himself did not use. (Mem. at 19–22.) Arby's also argues that Alongis lacks standing to seek injunctive relief. (*Id.* at 22–24.)

Alongis argues that he has class standing to assert claims regarding the Unpurchased Sandwiches at the pleading stage because these sandwiches are "substantially similar" to the Purchased Sandwiches and because "the alleged misrepresentation, that Arby's advertises [the Sandwiches] as containing, at a minimum, double the amount of meat that is contained in the actual product," and "rare roast beef[,] are the same." (Opp'n at 16.) With respect to his claims on behalf of the Class regarding purchases made through the Online Ordering Services, Alongis argues that he "need only establish that he has standing to pursue his own claim, not the claims of other class members," and that whether he "can represent other unidentified members of the

[Class], is a question that should be addressed at the class certification stage of this lawsuit." (*Id.* at 16–17.) Alongis also states that he "withdraws any claim for injunctive relief." (*Id.* at 17 n. 2.)

On reply, Arby's reiterates its argument that Alongis lacks standing for the two sets of claims because purchases of the Unpurchased Sandwiches and purchases made through the Online Ordering Services "do not raise nearly identical concerns to the two sandwiches he purchased in-store." (Reply at 9 (quotation marks omitted).) Arby's asserts that it is not premature to resolve the standing issue on a motion to dismiss because the Amended Complaint does not establish that the Unpurchased Sandwiches and Purchased Sandwiches are substantially similar or that the alleged misrepresentations regarding the Unpurchased Sandwiches and the Purchased Sandwiches are the same. (*Id.*) Arby's argues that each of the seven Sandwiches is unique, that litigating the Section 349 and Section 350 claims will require "evidence unique to each sandwich," and that Alongis has "fail[ed] to identify a single, specific alleged misrepresentation made by Arby's." (*Id.* at 9–10.)

The Second Circuit has distinguished between Article III standing and "'class standing'—that is, standing to assert claims on behalf of purchasers" who purchased products that the plaintiff did not themselves purchase. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012); *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 160 (2d Cir. 2014). It has distilled a two-part test for class standing as follows:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*NECA*, 693 F.3d at 162. Moreover, "in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement. Whether that conduct implicates the same set of concerns for distinct sets of plaintiffs, however, will depend on the nature and content of the specific misrepresentation alleged." *Id.*

The Second Circuit established this two-part, class action standing test in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, where it considered whether the plaintiff, who had purchased residential mortgaged-backed security ("RMBS") certificates from the defendants in two public offerings, had class standing to assert claims on behalf of a putative class that included individuals who purchased *different* certificates issued under the same allegedly false and misleading registration statement but sold in *different* offerings in which the plaintiff did not participate. *Id.* at 158. It recognized that the plaintiff "clearly lacked standing to assert" claims regarding the certificates it did not purchase "on its behalf," but nevertheless held that the "plaintiff ha[d] class standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates, because such claims implicate 'the same set of concerns' as plaintiff's claims." *Id.* at 148–49, 158; *see also id.* at 164. However, the plaintiff lacked class standing to assert the claims of purchasers of certificates backed by mortgages originated by *different* lenders than the lenders who originated the mortgages backing plaintiff's certificates. *Id.* at 163. While each purchaser's injury arose from the alleged misstatements in the Offering Documents, "each of those alleged injuries [had] the potential to be very different—and could turn on very different proof," which "center[ed] on whether the particular originators of the loans backing the particular Offering

from which a Certificate-holder purchased a security had in fact abandoned its underwriting guidelines, rendering defendants' Offering Documents false or misleading." *Id.*

The Second Circuit applied these standards in *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*, where it affirmed a district court's dismissal of the plaintiffs' breach-of-duty claims, which were brought on behalf of a putative class of investors against the trustee of hundreds of RMBS trusts in which the plaintiffs had not themselves invested. 775 F.3d at 157. The plaintiffs alleged that the defendant "violated its duties when it failed to notify certificateholders of [the mortgage originator's] breaches of the governing agreements, failed to force [the mortgage originator] to repurchase defaulted mortgage loans, and failed to ensure that the mortgage loans held by the trusts were correctly documented." (*Id.*) In affirming dismissal, the Second Circuit clarified that when the broad standard for class standing "is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Ret. Bd.*, 775 F.3d at 161. It observed that determining whether the mortgage originator "breached its obligations . . . requires examining its conduct with respect to each trust" and "looking at individual loans and documents," so "the nature of the claims . . . unavoidably generates significant differences in the proof that will be offered for each trust." *Id.* at 162–63. Therefore, the plaintiffs' claims with respect to certificates it purchased from the defendant "does not encompass proving claims related to certificates from other trusts" and the plaintiffs' claims did "not implicate the same set of concerns as those of absent class members who purchased certificates issued by trusts in which no named Plaintiff invested." *Id.*

District courts in the Second Circuit have come to different conclusions regarding whether class standing should be resolved at the pleading stage or the class certification stage.

See *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 562–63 (S.D.N.Y. 2016) (collecting cases that have and have not resolved class standing at the motion to dismiss stage). "Several courts 'have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase.'" *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 276–77 (E.D.N.Y. 2021) (quoting *Daniel v. Tootsie Roll Indus.*, LLC, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018)).

Here, Alongis has established class standing to bring claims on behalf of Class and Subclass members, both of which include consumers who bought the same two sandwiches as Alongis (the Purchased Sandwiches) as well as consumers who bought at least one of the five sandwiches that Alongis did *not* purchase (the Unpurchased Sandwiches).

Alongis satisfies the first element of the class standing standard because the Amended Complaint plausibly alleges that Alongis personally suffered some actual injury as a result of Arby's putatively illegal conduct. *See NECA*, 693 F.3d at 162. This standard is met by taking together the allegations: (1) that Alongis bought the two Purchased Sandwiches (the Smokehouse Brisket sandwich and the Double Beef 'N Cheddar sandwich) in an Arby's store; (2) that he "viewed and relied on" photographs of the Purchased Sandwiches on Arby's website as well as photographs of the Smokehouse Brisket sandwich and the Beef 'N Cheddar sandwich on "Arby's menu ordering board" prior to purchasing the sandwiches; (3) that the sandwiches he received "contained less than half of the amount of meat than he expected"; (4) that "the Double Beef 'N Cheddar sandwich" he received "did not contain any rare roast beef"; and (5) that he would not have purchased or paid the price he paid for the Purchased Sandwiches if he knew

22

they "contained less than half of the amount of meat as advertised" and that the Double Beef 'N Cheddar sandwich "would not contain any rare roast beef." (*Id.* ¶¶ 20–22, 25–28.)

Alongis also satisfies the second element of the class standing standard because Arby's conduct alleged to have injured him "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class[es] by the same defendant[]." *NECA*, 693 F.3d at 162. "[T]he nature and content of the specific misrepresentation alleged" by Alongis is similar with respect to the Purchased Sandwiches and Unpurchased Sandwiches. *Id.* The Amended Complaint alleges that Arby's "displayed" photographs of all seven of the Sandwiches on the in-store and drive through menus at every Arby's store location in New York and on the websites and mobile applications of the Online Ordering Services, and that the photographs both overstated the volume of meat in the Sandwiches and misrepresented that the Sandwiches contain rare, rather than fully-cooked, roast beef. (Am. Compl. ¶¶ 3–4, 35–37.) The alleged misrepresentations—which concern the amount and characteristics of the meat in the Sandwiches—are common among the Purchased and Unpurchased Sandwiches, and the photographs are alleged to be used in substantially similar contexts. There will be no "significant differences in the proof" required to prove the misrepresentation claims with respect to the Purchased Sandwiches as compared to the Unpurchased Sandwiches. *Ret. Bd.*, 775 F.3d at 163. Alongis's "litigation incentives" are therefore "sufficiently aligned with those of" absent members of the Class and Subclass, as required for standing to bring the Section 349 and Section 350 claims on behalf of the Class and Subclass with respect to all Sandwiches. *Id.* at 161.

Arby's argues that Alongis cannot establish class standing to sue on behalf of either the Class or Subclass with respect to the Unpurchased Sandwiches because each of the Sandwiches are "distinct products" with "distinct characteristics, ingredients, advertising, imagery, even

caloric content displayed on the menu boards and on the Arby's website." (Mem. at 20.) In making this argument, however, Arby's relies on cases that are either distinguishable or do not support Arby's position.

First, *Holve v. McCormick & Co.*, actually supports a finding that Alongis has class standing to assert claims on behalf of Class and Subclass members who bought the Unpurchased Sandwiches. 334 F. Supp. 3d 535 (W.D.N.Y. 2018). In that case, the court found that, although some of the products contained different ingredients, the plaintiff had class standing to assert claims on behalf of purchasers of spice and seasoning products that she had *not* purchased because the plaintiff alleged that the defendant misleadingly labeled both the purchased and unpurchased products as "natural"—the alleged misrepresentation. *Id.* at 551. Likewise, Alongis alleges that Arby's misrepresented the amount and characteristics of the meat in all of the Sandwiches through the same means: it's use of misleading photographs in its advertisements viewed by consumers prior to purchasing the items.

Second, both *Hart v. BHH, LLC* and *DiMuro v. Clinique Labs, LLC* are distinguishable. *See Hart*, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016); *DiMuro*, 572 F. App'x 27, 29 (2d Cir. 2014). In *Hart*, the district court found that the plaintiff lacked standing because "unique evidence would be required to prove that [the] [d]efendants' statements . . . were actually false or misleading" regarding the purchased products, which were "plugged into electric sockets and are advertised only to repel insects and mice from a home," and the unpurchased products, which were "solar-powered devices mounted in gardens to repel animals such as raccoons, deer, squirrels, cats and dogs from a yard." 2016 WL 2642228, at *4. In *DiMuro*, the Second Circuit, via summary order, affirmed dismissal of the plaintiffs' claims because each of the seven products at issue had "different ingredients" and the defendant "made different advertising

24

claims for each product," requiring "[e]ntirely unique evidence . . . to prove that the 35–some advertising statements for each of the seven different . . . products are false and misleading." 572 F. App'x at 29. By contrast, here, while some additional proof may be required for each of the Sandwiches, there are no "*significant* differences in the proof" required to show that Arby's misrepresented the amount and characteristics of the meat in each of the Sandwiches. *See Ret. Bd.*, 775 F.3d at 163 (emphasis added). While there may be some different ingredients in the Purchased Sandwiches versus the Unpurchased Sandwiches, such differences are unrelated to the alleged misrepresentations at issue—the amount of meat and the degree to which the meat is cooked—which is common to the Purchased Sandwiches and the Unpurchased Sandwiches.

Third, Arby's reliance on *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039 (S.D. Ill. 2022), is misplaced. *Jackson* is an out of Circuit decision that addresses the plaintiff's Article III standing and does not engage with the two-part class standing test used in the Second Circuit. *Id.* at 1044–45. Despite finding that the purchased and unpurchased products were "very similar products . . . in similar packaging that use apparently highly similar (if not, identical) language that the Plaintiff claims to be deceptive," the plaintiff lacked Article III standing because "she ha[d] not demonstrated that she ha[d] a personal stake in the outcome of any litigation regarding any product except the" product she purchased. *Id.* at 1044. In light of the district court's findings concerning the similarities in the products and the alleged misrepresentations at issue in *Jackson*, it stands to reason that if that court had applied Second

Circuit precedent, it would have found that the plaintiff established class standing regarding the unpurchased products.[7]

Alongis has class standing to bring claims on behalf of the Class at this stage of the litigation notwithstanding the fact that he allegedly did not buy any of the Sandwiches through any of the Online Ordering Services.[8] The Class consists of "[a]ll persons or entities that purchased" one of the Sandwiches "from the website or mobile application for" the Online Ordering Services" (Am. Compl. ¶ 38.) As noted, Alongis satisfies the first prong of the class standing test because he allegedly personally suffered actual injury as a result of Arby's allegedly deceptive and misleading advertisements—specifically, the injury of viewing the allegedly misleading and deceptive photographs on Arby's website and inside its Bellmore location prior to buying the Purchased Sandwiches. *See NECA*, 693 F.3d at 162; Am. Compl. ¶¶ 20–22. Alongis also satisfies the second prong of the test because Defendants' alleged use of deceptive and misleading photographs on their Online Ordering Services "implicates the same set of concerns" as Arby's alleged use of deceptive and misleading photographs on its website

---

[7] The court in *Jackson* applied Seventh circuit decisions that do not recognize a plaintiff's class standing when the defendant's conduct that injured the plaintiff implicates the same set of concerns as the challenged conduct that is alleged to have injured other members of the putative class, but that did not directly injure the plaintiff. *See Jackson*, 648 F. Supp. 3d at 1044 (applying *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury he does not share. Standing cannot be acquired through the back door of a class action."))

[8] Since Alongis is not alleged to have purchased any of the Sandwiches through the Online Ordering Services, it may be that Alongis will have difficulty meeting the typicality requirement for certification of the Class pursuant to Fed. R. Civ. P. 23(a). *See Elisa W. v. City of New York*, 82 F.4th 115, 122, 128 (2d Cir. 2023) ("Typicality requires that the claims of the class representative[] be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

and in its Bellmore store, which Alongis relied upon before purchasing the Double Beef 'N Cheddar and Smokehouse Brisket sandwiches in store. *NECA*, 693 F.3d at 162; Am. Compl. ¶¶ 20–22. Moreover, resolution of putative Class members' claims, which hinge on alleged viewing of the photographs before buying Sandwiches via the Online Ordering Services would not "generate significant differences in the proof" needed to resolve Alongis's claim that the *same* photographs viewed before buying the Purchased Sandwiches in an Arby's store were false or misleading. *Ret. Bd.*, 775 F.3d at 163. Here, the Class claims do not require "[e]ntirely unique evidence" to prove that the photographs for the Sandwiches viewed on the Online Ordering Servies are false and misleading. *DiMuro*, 572 F. App'x at 29.

Accordingly, Arby's Motion to Dismiss pursuant to Rule 12(b)(1) is denied without prejudice because any differences in the photographs used in the Online Ordering Services versus Arby's website and in-store/drive-through menu boards can be addressed at the class certification stage. *See Grossman*, 516 F. Supp. 3d at 277 (denying motion to dismiss for lack of plaintiff's class standing relating to "unpurchased [p]roducts . . . *without prejudice*," and finding that "any specific concerns regarding the [p]roducts' differences can be addressed at the class certification stage." (emphasis added)); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) (denying a motion to dismiss due to lack of class standing because "the appropriate time to consider whether plaintiffs can bring claims on behalf of purchasers of all of the various [unpurchased products] is at the class certification stage, not on a motion to dismiss.")

## II.   Failure to State a Claim

Arby's moves to dismiss the Amended Complaint under Rule 12(b)(6) on multiple grounds. First, Arby's argues that the Amended Complaint fails to plausibly plead that a

reasonable consumer would be misled by its advertisements. (Mem. at 4–13.) Second, it contends that the Amended Complaint has failed to plead a cognizable injury because it contains only conclusory injury allegations. (*Id.* at 13–16.) Third, Arby's argues that the Amended Complaint contains no allegations supporting a plausible causal connection between Alongis's alleged injury and Arby's alleged misrepresentations with regard to the Unpurchased Sandwiches and with regard to Sandwiches purchased on the Online Ordering Services. (*Id.* at 16–18.)

Drawing all inferences in favor of Alongis, for the reasons explained below, the Section 349 and Section 350 claims regarding the amount of meat in the Half Pound Sandwiches are dismissed with prejudice under Rule 12(b)(6). The remainder of Arby's Motion to Dismiss under Rule 12(b)(6) is denied.

## A. The Parties' Arguments

Arby's first argues that the Amended Complaint does not plausibly allege that reasonable consumers would be deceived by Arby's advertisements because they are "nonactionable puffery" and do not contain affirmative statements about the amount of meat in each Sandwich or the degree to which the meat in the Sandwiches is cooked. (Mem. at 4–10.) Specifically, Arby's asserts that its advertisements "make no explicit claims as to any of the Sandwiches' specific characteristics." (*Id.* at 6.) According to Arby's, the Amended Complaint's reliance on an alleged statement by an Arby's representative regarding their advertising is not credible and should not be considered. (*Id.* at 11–12.) Arby's also contends that the statements made by YouTube content creators do not demonstrate that a reasonable consumer would be deceived by Arby's photographs because Alongis cannot show that these individuals shared his expectations about the Sandwiches or represent the views of reasonable consumers. (*Id.* at 12–13.)

Second, Arby's argues that the Amended Complaint fails to plausibly plead a cognizable injury because it contains only conclusory allegations that Alongis would not have purchased the Sandwiches or would have paid a lower price than he did and that he was subjectively dissatisfied with the Purchased Sandwiches. (*Id.* at 14–16.)

Third, in an argument that is nearly identical to its standing challenge, Arby's contends that the Amended Complaint fails to plausibly plead a causal connection between Alongis's alleged injury and the alleged misrepresentation with regard to the photographs of the Unpurchased Sandwiches and with regard to Sandwiches purchased through the Online Ordering Services because his alleged injury only stems from an in-store purchase of the Purchased Sandwiches. (*Compare id.* at 16–18, *with id.* at 19–24.)

In opposition, Alongis makes four arguments. First, he asserts that the question of whether a reasonable consumer was deceived by a statement is a fact question not appropriate for disposition on a motion to dismiss. (Opp'n at 4–5.) Second, Alongis argues that the Amended Complaint plausibly alleges that Arby's advertisements "are likely to mislead a reasonable consumer acting reasonably under the circumstances" because it alleges objective misrepresentations, in that the photographs misrepresented the amount of meat on the Sandwiches by 100% and misrepresented the roast beef as rare. (*Id.* at 5–6.) Third, Alongis offers the same rationale for his contention that the advertisements are not non-actionable puffery. (*Id.* at 11–12.) Fourth, Alongis argues that the Amended Complaint plausibly pleads a price premium theory of injury under Second Circuit caselaw. (*Id.* at 12–15.)

On reply, Arby's reiterates the arguments made in its opening brief and adds that the Amended Complaint fails to plead plausible Section 349 and Section 350 claims with respect to the two Sandwiches that "make . . . measurable statements about the amount of roast beef"

contained in them—the Half Pound Roast Beef sandwich and the Half Pound Beef 'N Cheddar sandwich. (Reply at 3.) According to Arby's, the Amended Complaint offers no allegations that Alongis or any other consumer who purchased one of the Half-Pound Sandwiches actually received a sandwich containing less than a half-pound of roast beef, as required for such a claim to survive a Rule 12(b)(6) motion. (*Id.*)

### B. The Applicable Law

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a), (h). Section 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. A plaintiff bringing either claim must plausibly allege "that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020).

With respect to the second element of claims under Sections 349 and 350, "[a] defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably *under the circumstances*." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 607 (2d Cir. 2024) (emphasis added); *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the . . . advertisement as a whole"); *West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 368 (S.D.N.Y. 2024) ("When evaluating what a reasonable consumer would believe, the Court must consider the entire context"). "A material statement is one bearing on a consumer's choice to participate in a transaction." *Yodice v. Touro Coll. & Univ. Sys.*, 767 F. Supp. 3d 86, 95 (S.D.N.Y. 2025) (citing *McCrackern*, 91 F.4th at 608). "[A] plaintiff must plausibly allege that a

significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 18 (S.D.N.Y. 2025). "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Id.*; *see also Noriega v. Abbott Lab'ys*, 714 F. Supp. 3d 453, 458 (S.D.N.Y. 2024); *Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 429 (E.D.N.Y. 2024).

The Second Circuit has recognized a "puffery" defense against allegations of materially misleading statements. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2023). Puffery that cannot give rise to a Section 349 or Section 350 claim includes:

> (1) subjective statements that *cannot* be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that *can* be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them.

*Id*. (emphasis added). Subjective puffery includes "exaggerations or overstatements that mention nothing specific" but instead are "general claims of superiority expressed in broad, vague, and commendatory language." *Id*. Objective puffery involves "exaggerated, blustering, and boasting statements that are *objective*—and therefore technically provable—but upon which no reasonable buyer would be justified in relying." *Id*. (emphasis in original). With respect to objective puffery, "[e]ven if a claim is provable as false, if it is so patently hyperbolic that any allegations that it misled consumers are facially implausible, it is non-actionable puffery that no reasonable buyer would be justified in relying on." *Id*. at 96–97.

The Second Circuit has offered an example of objective puffery as follows: "If a bubblegum brand advertised that its gum permits chewers to blow a bubble as big as the moon,

31

the statement would be literally false, but it is facially implausible that any reasonable buyer could justifiably rely on that claim." *Id*. at 97. "Once the statement is identified as both provable as false and plausible, a defendant can only prevail on the puffery defense after a fact-intensive inquiry on how a reasonable buyer would react." *Id*.

Finally, regarding the third element of claims under Sections 349 and 350, "a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (2000).

### C. Alongis's Section 349 and Section 350 Claims

Before addressing the merits of Arby's arguments, I note that Alongis misstates the standard applied to Arby's Motion to Dismiss. The relevant inquiry is not "whether it is *impossible* for [Alongis] to prove that a reasonable consumer would likely be deceived by Defendant's advertisements," as Alongis contends, but instead whether the Amended Complaint plausibly alleges claims under Sections 349 and 350 stemming from Arby's use of the challenged photographs to advertise the Sandwiches. Opp'n at 3 (emphasis added); *see also supra* Legal Standards § II. The standard applied to assess the claims in the Amended Complaint is one of plausibility, not "possibility," as Alongis suggests. (Opp'n at 5.)

Turning to the merits, the parties do not dispute that the Amended Complaint plausibly pleads the first element of claims brought under Sections 349 and 350—that Arby's engaged in "consumer-oriented conduct." *Plavin*, 146 N.E.3d at 1168. The parties dispute, however, whether the Amended Complaint plausibly pleads the second and third elements: that Arby's challenged advertisements were materially misleading and that Alongis suffered an actual injury as a result of Arby's use of those advertisements. *See id.* The Amended Complaint pleads two different sets of claims under Sections 349 and 350: the first set are based on allegations that Arby's

advertisements materially misrepresented that the Sandwiches contain rare roast beef (the Rare Roast Beef Misrepresentation Claims); the second set are based on allegations that the advertisements misrepresented that the Sandwiches contain at least double the amount of meat than consumers actually receive (the Volume Misrepresentation Claims). I address each set of claims separately.

### i. *The Rare Roast Beef Misrepresentation Claims*

The Amended Complaint plausibly alleges Section 349 and Section 350 claims against Arby's use of advertisements featuring photographs that allegedly misrepresented that the Sandwiches contain rare roast beef.

The first element of the claim—that the defendant engaged in consumer-oriented conduct—is undisputed by the parties and satisfied because the Amended Complaint alleges that Arby's sold the Sandwiches to consumers through in-store, drive-through, and online orders. (Am. Compl. ¶ 60.)

With respect to the second element—that the consumer-oriented conduct is plausibly misleading—the Amended Complaint plausibly alleges that Arby's used advertisements for the Sandwiches that materially misrepresented that the Sandwiches contain rare, rather than fully-cooked, roast beef because it is plausible that the photographs in the advertisements would mislead reasonable consumers who are contemplating whether to purchase one of the Sandwiches in a fast food context. *See McCracken*, 91 F.4th at 607. Arby's advertisements in-store, at its drive-throughs, and on the Online Ordering Services allegedly prominently featured photographs of the Sandwiches that visually depict reddish, light-colored meat, which is associated with rare, rather than fully-cooked, roast beef (Am. Compl. ¶¶ 4–8, 35–37, 60, 72) The Amended Complaint includes the photographs used on Arby's website for five of the seven

Sandwiches (Classic Roast Beef, Classic Beef 'N Cheddar, Half Pound Beef 'N Cheddar, Double Beef 'N Cheddar, Smokehouse Brisket) which it alleges are the same photographs "displayed on the menu ordering boards located within the store and in the drive-through at every Arby's store location in New York" and used on the Online Ordering Services. (Am. Compl. ¶¶ 5–9, 35–37.)[9]

Arby's puffery defense does not warrant dismissal of the Rare Roast Beef Misrepresentation Claims at the pleading stage. Contrary to Arby's argument, its photographic advertisements of the Sandwiches are not subjective puffery because they do not consist of "subjective statements of opinion which cannot be proven false." *MacNaughton*, 67 F.4th at 96; *see* Mem. at 6–7. In terms of Arby's objective puffery defense, the advertisements are provable as false in that it can be readily determined whether the meat actually used in the photographs consisted of rare meat. Nevertheless, the photograph is not "so patently hyperbolic that any allegations that it misled consumers are facially implausible," even when considering the fast-food context in which the advertisements are viewed and relied upon. *MacNaughton*, 67 F.4th at 96. Arby's is correct that consumers view these advertisements before purchasing the Sandwiches, whether in person, at a drive-through, or through an Online Ordering Service, with an expectation of a relatively lower priced and fast meal. (Mem. at 9–10.) Nevertheless, even considering the advertisements in this context, it is plausible that a reasonable consumer viewing these advertisements immediately prior to ordering one of the Sandwiches is misled to believe that the sandwich they will receive will rare, as opposed to more cooked, roast beef. (*See* Am. Compl. ¶¶ 5–8.) Therefore, because the challenged advertisements are provable as false *and*

---

[9] As noted, the Amended Complaint does not contain photographs of actual Double Roast Beef and Half Pound Roast Beef sandwiches purchased by consumers or the photographs of these two Sandwiches as used in the challenged advertisements. (*See generally* Am. Compl.) Alongis provides no explanation in his opposition to Arby's Motion to Dismiss for the omissions.

plausible, Arby's can prevail on an objective puffery defense only "after a fact-intensive inquiry on how a reasonable buyer would react" to the advertisements. *MacNaughton*, 67 F.4th at 97.

Arby's relies on inapposite cases to argue that its puffery defense can be resolved at the motion to dismiss stage. In *Wysong Corp. v. APN, Inc.*, the Sixth Circuit found that the defendants use of labels and images regarding "fresh ingredients" on their dog food products' packaging were puffery because the products' packaging also listed the products' ingredients, including the non-fresh ingredients. 889 F.3d 267, 271–72 (6th Cir. 2018). Here, the Amended Complaint alleges that Arby's advertisements misled customers as to whether the Sandwiches contain rare, rather than more cooked, roast beef, not whether the Sandwiches contain any roast beef or lacked another ingredient.

Each of the remaining cases upon which Arby's relies to invoke the puffery defense are distinguishable because they concerned verbal statements, rather than photographic depictions that are both provable as true or false and also plausibly deceptive and misleading, as is the case here. *See Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, 498 (5th Cir. 2000) (restaurant advertisements using "Better Ingredients. Better Pizza." slogan); *Solak v. Hain Celestial Grp., Inc.*, No. 17-cv-704, 2018 WL 1870474, at *6 (N.D.N.Y. Apr. 17, 2018) ("the Straws are a 'smart and wholesome' way of satisfying consumers' 'snack craving[s]'"); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (diet soda advertised to "not go to your waist"); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153–54 (S.D.N.Y. 2022) (wool shoes advertised with "Our Sheep Live The Good Life" slogan); *Brown v. Kerry Inc.*, No. 20-cv-9730, 2021 WL 5446007, at *5 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) (teas labeled as "Slightly Sweet"); *Fraker v. KFC Corp.*, No. 06-cv-1284, 2006 WL 8430934, at *3 (S.D. Cal. Oct. 19, 2006) (fast food restaurant advertised as "utilizing only

the highest quality ingredients, innovative recipes, and time-tested cooking methods" and providing the "best food").

With respect to the third element of Alongis's claims under Sections 349 and 350, the Amended Complaint plausibly alleges that Alongis suffered an actual injury as a result of the advertisements' allegedly false and deceptive depiction of the Sandwiches as containing rare roast beef. It alleges that Alongis "viewed and relied on" the challenged advertisements on Arby's website and on the menu ordering board in the Bellmore location prior to buying the Purchased Sandwiches and that he "expected" that "the color of the roast beef in his Double Beef 'N Cheddar sandwich would be similar to the color of the meat contained in the" advertisements. (Am. Compl. ¶¶ 20–22, 26.) It also alleges that "the Double Beef 'N Cheddar sandwich he purchased did not contain any rare roast beef at all," and that he "would not have purchased . . . and/or . . . would not have paid the price that he paid" for the sandwich if he "knew that [it] would not contain any rare roast beef." (*Id.* ¶ 28.) Thus, contrary to Arby's contentions, Alongis allegedly would have paid less for one of the Purchased Sandwiches had Arby's advertisements not been materially misleading as to the level at which the roast beef in the sandwich was cooked. Taken together, these allegations plausibly allege actual injury sufficient for Alongis's claims under Sections 349 and 350. *See Cohen v. Nutricost*, 747 F. Supp. 3d 467, at 481 (E.D.N.Y. 2024) (finding plausible allegation of injury where the amended complaint alleged that the plaintiff paid less for supplements had the defendant's labeling not misrepresented the amount of the magnesium glycinate actually delivered by the products); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations.").

Arby's argues—unconvincingly—that the Section 349 and 350 claims concerning the Unpurchased Sandwiches and Sandwiches purchased through the Online Ordering Services must be dismissed at the pleading stage because the Alongis lacks the required injury. As discussed, Alongis has class standing to bring claims on behalf of members of the Class and the Subclass who bought Unpurchased Sandwiches, which Alongis did not buy, and members of the Class who purchased any of the Sandwiches through the Online Ordering Services, which Alongis did not use. *See supra* Discussion § I. Arby's alleged misrepresentations—its advertisements allegedly misrepresenting that the Sandwiches contain rare roast beef—are consistent with respect to each of the Sandwiches, including the two specific sandwiches that Alongis purchased, for which Alongis would have paid less money had he known that the meat in the sandwiches would have been cooked, rather than rare, roast beef. (Am. Compl. ¶¶ 4, 20–22, 28.)[10] Thus, the Amended Complaint sufficiently alleges causation between Arby's advertisements and Alongis's monetary injury. Courts in the Second Circuit have held that a plaintiff has pled plausible Section 349 and 350 claims on behalf of a putative class concerning products the plaintiff did not personally purchase when the plaintiffs met the requirements for class standing to bring such claims on the behalf of consumers who did in fact purchase those products. *See, e.g.*, *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 304, 309 (S.D.N.Y. 2024); *Grossman*, 516 F. Supp. 3d at 277, 282; *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563, 566 (S.D.N.Y. 2016).

---

[10] While the Amended Complaint alleges that *all* of the Sandwiches contain roast beef, it is unclear if at least one Sandwich, the Smokehouse Brisket, actually contains any roast beef. (Am. Compl. ¶ 4, 9.) Nevertheless, whether this Sandwich does in fact contain meat other than roast beef is a question for summary judgment.

Accordingly, the Amended Complaint pleads plausible claims under Sections 349 and 350 against Arby's use of advertisements that allegedly misrepresented that the meat in the Sandwiches is rare, rather than more cooked roast beef, and I deny the Motion to Dismiss these claims under Rule 12(b)(6).

### ii.   The Volume Misrepresentation Claims

The Amended Complaint also plausibly alleges claims under Sections 349 and 350 against Arby's use of advertisements that allegedly misrepresented the volume of meat in the Non-Half Pound Sandwiches. By contrast, it fails to bring such plausible claims with respect to the volume of meat in the Half Pound Sandwiches.

As discussed, the Amended Complaint plausibly alleges that Arby's engaged in consumer-oriented conduct—the first element of claims under Sections 349 and 350. *See supra* Discussion § II.C.i (citing Am. Compl. ¶ 60).) With respect to the second element, however, Arby's advertisements could not plausibly mislead reasonable consumers regarding the volume of meat in the Half Pound Sandwiches.

The advertisements of the Half Pound Roast Beef and Half Pound Beef 'N Cheddar sandwiches consist not only of the photographs of these Sandwiches, but also their names, which are additional affirmative statements communicating that each of these two Sandwiches contain a half pound of meat. The Amended Complaint alleges that the photographs for these two Sandwiches (like the other five Sandwiches) were displayed on the menu ordering boards located in Arby's stores and at drive throughs, on Arby's website, and on the Online Ordering Services in a manner that required consumers to view the photographs before purchasing one of the Sandwiches. (Am. Compl. ¶¶ 20–22, 35–37.) It is implausible that a consumer ordering a Half Pound Sandwich could do so without actually using the name—whether by verbally stating it

during an in-store or drive-through purchase, or by selecting the name through an Online Ordering Service. The Amended Complaint, however, does *not* allege that customers who purchased the Half Pound Sandwiches received *less* than a half a pound of meat as stated in the names of the Half Pound Sandwiches. The Amended Complaint thus fails to plausibly allege that a reasonable consumer acting reasonably under the circumstances would be misled by the advertisements for the Half Pound Sandwiches regarding the *volume* of meat contained in each Sandwich because the volume is explicitly addressed in the name of these sandwiches. *McCracken*, 91 F.4th at 607 (a statement is materially misleading when it is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*" (emphasis added)); *see, e.g.*, *Wurtzburger v. Kentucky Fried Chicken*, No. 16-cv-8186, 2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) (dismissing claims under Sections 349 and 350 where the plaintiff alleged she "purchas[ed] an eight piece chicken meal" and did "not claim she received less than eight pieces"); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (affirming dismissal of claims under Sections 349 and 350 because the alleged misleading advertisements "clearly depict the 'steak' in the [p]roducts as a beef patty" which is what the plaintiff actually received); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018) (finding that a reasonable consumer could not be misled about the amount of a product contained in the package, which was labeled with the product's net weight). Accordingly, the claims under Sections 349 and 350 against Arby's use of advertisements for the Half Pound Sandwiches that allegedly misrepresented the volume of meat in these two products are dismissed under Rule 12(b)(6).

With respect to the Non-Half Pound Sandwiches, however, the Amended Complaint plausibly alleges that Arby's used false and deceptive advertisements, which materially

misrepresented that the Sandwiches contain at least double the amount of meat than what members of the putative Class and Subclass actually received. The Amended Complaint alleges that Arby's advertisements on its website, in-store, at the drive-through, and on the Online Ordering Services use photographs of the Non-Half Pound Sandwiches that visually depict at least double the amount of meat that is actually provided in a purchased sandwich. (Am. Compl. ¶ 3, 10, 56, 72) As discussed, the Amended Complaint provides the photographs used on Arby's website for five of the seven Sandwiches, which it alleges are the same photographs "displayed on the menu ordering boards located within the store and in the drive-through at every Arby's store location in New York." (*Id.* ¶¶ 5–9, 35.) Moreover, in each photograph used in the advertisements, the meat in the sandwiches plausibly appears to constitute at least double the amount of meat in the sandwiches actually purchased by Alongis and other consumers, as shown in the Amended Complaint. (*Id.* ¶¶ 5–9.)

As with the Rare Roast Beef Misrepresentation Claims, Arby's puffery defense does not warrant dismissal of these claims at the pleading stage because Arby's photographic advertisements of the Non-Half Pound Sandwiches are not subjective nor objective puffery. The photographs are not subjective puffery because it is provable whether the photographs in the advertisements contain at least 100% more meat than what Arby's actually provides in the Sandwiches purchased in New York. *MacNaughton*, 67 F.4th at 96 ([S]ubjective statements that cannot be proven true or false and are therefore non-actionable puffery . . . .") Moreover, the photographs of the Non-Half Pound Sandwiches used in the challenged advertisements are not "so patently hyperbolic" that the allegation that the photographs contained at least double the volume of meat provided in purchased sandwiches is "facially implausible," and therefore objective puffery. *Id.* The photographs plainly show the Non-Half Pound Sandwiches with

significant amounts of meat—amounts that are not so hyperbolic that it is implausible for a reasonable consumer to be misled into thinking that if they purchase one of the Sandwiches, they would receive a sandwich containing an amount of meat as voluminous as what is shown in the photograph. (*See* Am. Compl. ¶¶ 5–9.)

Arby's relies on distinguishable cases to argue that in the context in which the challenged advertisements are viewed, it is implausible that a reasonable consumer would be misled with respect to the volume of meat in the Non-Half Pound Sandwiches. In *Chimienti v. Wendy's International, LLC*, another judge of this Court found that claims under Section 349 and 350 were implausible because the plaintiff did not "allege that [the] [d]efendants created a misleading impression about the size of their meals by using more meat in their advertisements than they serve in their stores," "an objective fact and . . . therefore not puffery" but "instead allege[d] that [the] [d]efendants create this impression by using an identical amount of uncooked meat in their ads." 698 F. Supp. 3d 549, 559 (E.D.N.Y. 2023). Here, as discussed, the Amended Complaint *does* allege that Arby's used a larger volume of meat in their advertisements for each of the Non-Half Pound Sandwiches than the volume of meat provided in the actual sandwiches purchased by Alongis and other consumers. (Am. Compl. ¶ 3, 10, 56, 72.)

In *Brown v. Kellogg Sales Company*, the court rejected the plaintiff's argument that the use of photographs of fresh strawberries on the packaging of the pastry product at issue misled reasonable consumers into thinking the pastry contained no other fruit than fresh strawberries. No. 20-cv-7283, 2022 WL 992627, at *4 (S.D.N.Y. Mar. 31, 2022). Here, the Amended Complaint alleges that photographs of the actual products at issue (the Non-Half Pound Sandwiches) were used in the allegedly misleading advertisements. (Am. Compl. ¶ 3.) The

claims here do not center on the use of images of specific ingredients divorced from a photograph of the entire product itself.

Finally, in *Harris v. McDonald's Corporation* and *Warren v. Coca-Cola Company*, the claims under Sections 349 and 350 in each case centered on allegations that reasonable consumers were misled to believe that the products at issue contained a specific ingredient that was not present in the purchased product—not that the purchased products actually provided to consumers lack the promised volume of a specific ingredient, as is alleged here. *Harris*, No. 20-cv-6533, 2021 WL 2172833, at *2 n.1 (N.D. Cal. Mar. 24, 2021) (no vanilla bean used in vanilla ice cream and vanilla cones); *Warren*, 670 F. Supp. 3d 72, 81 (S.D.N.Y. 2023) (no tequila or mineral water sourced from Monterrey, Mexico used in hard seltzers).

With respect to the third element of claims under Sections 349 and 350—actual injury suffered due to the allegedly false and deceptive act or practice—the Amended Complaint plausibly alleges that Alongis, as well as members of the putative Class and Subclass, suffered actual injury as a result of the advertisements' depiction of the Non-Half Pound Sandwiches that contained at least double the volume of meat as compared to what consumers actually received in purchased sandwiches. Alongis "viewed the photographs for Arby's Double Beef 'N Cheddar and Smokehouse Brisket sandwiches from the menu ordering board on Arby's website." (Am. Compl. ¶ 20.) After arriving at the Arby's Bellmore location, Alongis "viewed and relied on . . . photographs of the Beef 'N Cheddar and Smokehouse Brisket sandwiches on the instore menu ordering board prior to the time that he placed his order," "expected that the Double Beef 'N Cheddar that he ordered would contain approximately double the amount [of] beef as contained in the photograph for the Beef 'N Cheddar sandwich on the in-store menu ordering board," and "expected that the Smokehouse Brisket sandwich that he ordered would contain a

similar amount of meat as contained in the photograph for the Smokehouse Brisket sandwich on the in-store menu ordering board." (*Id.* ¶¶ 22–24.) However, the sandwiches that Alongis received "contained less than half of the amount of meat than he expected." (*Id.* ¶ 25.) The Amended Complaint further alleges that Alongis "would not have purchased" the Purchased Sandwiches "and/or he would not have paid the price that he paid," if he "knew that the [Purchased Sandwiches] contained less than half of the amount of meat as advertised." (*Id.* ¶ 27.) Based on these allegations, the Amended Complaint plausibly alleges that Alongis would have paid less for the Purchased Sandwiches had Arby's advertisements not materially misled him into believing that the Purchased Sandwiches would contain at least double the amount of meat as compared to what he actually received. Thus, the Amended Complaint plausibly alleges actual injury sufficient for the claims under Sections 349 and 350 concerning the volume of meat advertised for the Non-Half Pound Sandwiches. *See Cohen*, 747 F. Supp. 3d at 481; *Koenig*, 995 F. Supp. 2d at 288.

Accordingly, the Amended Complaint brings plausible claims under Sections 349 and 350 against Arby's use of advertisements for the Non-Half Pound Sandwiches that allegedly misrepresented the volume of meat provided to consumers in purchased sandwiches, and I deny this portion of Arby's Motion to Dismiss under Rule 12(b)(6).

## III.   Leave to Amend

Alongis has requested leave to amend should the Amended Complaint be dismissed in whole or in part. (Opp'n. at 17.) Defendants argue that the Amended Complaint should be dismissed "with prejudice." (Reply at 10.)

Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after service of

a responsive pleading or motion under Rule 12(b), (e), or (f), Fed. R. Civ. P. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). After the time to amend as of right has passed—"either upon expiration of a specified period of time in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id.* at 115; *see also* Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Forman*, 371 U.S. at 182; *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-02987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018). "A plaintiff need not be given leave to amend if [the plaintiff] fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA*, 758 F.3d at 505 (finding that granting leave to amend would be futile because the plaintiff failed to show how amendment would address the pleading inadequacies); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999).

Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted, at which point the plaintiff must also satisfy the "good cause" requirement of Rule 16, Fed. R. Civ. P. *Sacerdote*, 9 F.4th at 115. After that date expires, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order

has passed). The purpose of Rule 16(b)(4) is to "offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures, Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000).

Here, Alongis was granted leave to amend the original Complaint in response to a joint request by the parties. (*See* Elec. Order, Nov. 6, 2023.) Rule 15(a)(2) governs the standard applied to determine whether Alongis should be granted leave to amend the dismissed claims under Sections 349 and 350 concerning alleged false and deceptive advertisements of the Half Pound Sandwiches because no deadline has been set for final amendment of the pleadings.

Leave to amend is properly denied as to the Sections 349 and 350 Volume Misrepresentation Claims relating to the Half Pound Sandwiches under Rule 15(a)(2) because amendment would be futile. As discussed in detail, it is implausible that any consumer seeking to purchase the Half Pound Sandwiches would be misled to believe that the sandwiches contain more than double the meat shown in the alleged photographic advertisements because the name of each Sandwich references that the sandwiches each contain half a pound of meat and the names of the sandwiches are used in the ordering process, whether the purchase takes place in store, at a drive-through, or through an Online Ordering Service. *See supra* Discussion § II.C.ii. Alongis has pointed to no facts that would be added to or otherwise amended in the Amended Complaint that would cure the defect in the Volume Misrepresentation Claims relating to the Half Pound Sandwiches due to the fact that the volume of meat promised by Arby's to consumers is explicitly identified in the name of these two specific sandwiches.[11] Amendment of

---

[11] Although Alongis requested permission to file a second amended complaint, he did not submit any proposed redline of the Amended Complaint identifying any specific proposed changes to cure the deficiencies identified by Defendants.

the Volume Misrepresentation Claims under Sections 349 and 350 relating to the Half Pound Sandwiches is therefore futile, and leave to amend is properly denied under Rule 15(a)(2). *See Forman*, 371 U.S. at 182; *Adlife Mktg.*, 2018 WL 4568801, at *1.

## CONCLUSION

Arby's Motion to Dismiss (ECF No. 21) is denied in part and granted in part, as set forth in detail above. The Motion to Dismiss the claims set forth in the Amended Complaint under Rule 12(b)(1) is denied without prejudice. The Volume Misrepresentation Claims relating to the Half Pound Sandwiches are dismissed with prejudice under Rule 12(b)(6), and leave to amend those claims is denied under Rule 15(a)(2). The Motion to Dismiss all other claims set forth in the Amended Complaint under Rule 12(b)(6) is denied.

Dated:  Central Islip, New York
        September 29, 2025

                                          */s/ Nusrat J. Choudhury*
                                          NUSRAT J. CHOUDHURY
                                          United States District Judge